Mary S. Bingham, Appellee, v. H. L. Ditzler et al., Appellants.

Gen. No. 41,421.

Original opinion filed January 22, 1941; rehearing opinion filed April 23, 1941.

THOMPSON, CHAMBERS & THOMPSON, of Chicago, for appellants; LAVERN W. THOMPSON, of counsel.

JOHN J. HEALY, of Chicago, for appellee and cross appellant.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is a complaint in equity filed by Mary S. Bingham, wife of Carl Bingham, against the defendants, Millard F. Bingham, Jr., H. L. Ditzler, H. A. Bresemann and the Chicago Roller Company, an Illinois corporation, praying for an accounting for certain moneys alleged to have been converted by Ditzler and Bresemann acting in collaboration with Millard F. Bingham, Jr., while Ditzler was president and Bingham, Jr., and Bresemann and the plaintiff were directors of the corporation. The sums involved represented bonuses paid to the president, Ditzler, and secretary-treasurer, Bresemann, without antecedent authority of the board of directors; also alleged excessive salary voted and paid to the president and a claim for an accounting as to the expenditures of certain moneys paid to the president for sales expense. The case was heard before the master in chancery and upon exceptions to his report which were overruled by the trial court a decree was entered in accordance with the master's recommendations finding that two bonuses of $1,800 each paid to Bresemann at the close of the years 1936 and 1937 respectively were illegally paid and that Ditzler should account for sales commissions of $6,195.52 and $7,805 paid to him during the years 1936 and 1937 respectively. The decree found the defendants Millard F. Bingham, Jr., Ditzler and Bresemann jointly and severally liable for the amounts and directed that they be paid to the corporation and referred the case back to the master to state the accounting. The appeal is taken by all of the defendants.

The pleadings consisted of an original complaint, a supplemental complaint and one answer to both said original and supplemental complaints. No question is raised in this court on the pleadings except as considered with the evidence.

The Chicago Roller Company is an Illinois corporation with an authorized capital stock of $10,000, divided

into 100 shares of $100 each, of which the plaintiff for many years has been the record and legal holder of 30 shares. In 1936 and 1937 its board of directors consisted of Mary S. Bingham, the plaintiff, and H. A. Bresemann and Millard F. Bingham, two of the defendants. Bresemann was also its secretary and treasurer. During that time the defendant H. L. Ditzler was its president. Neither Ditzler nor Bresemann owned or held any stock of the company. The stock holders other than plaintiff, were Millard F. Bingham, Jr., who owned 33 shares, Carl G. Bingham, husband of the plaintiff who owned 3 shares and Samuel A. Bingham, a resident of Tryon, North Carolina, who together with his wife owned the remaining 34 shares.

At the annual meeting of the directors in January, 1936, the salary of Ditzler as president and Bresemann, as secretary and treasurer was fixed at the sum of $7,200 for each of them. On the 30th day of July, 1936, against the vote and protest of the plaintiff, the two remaining directors passed a resolution authorizing a commission payment to officers acting as salesmen, of 7 per cent on sales up to fifty thousand dollars, and 6 per cent on sales in excess of that amount. Ditzler was the only officer acting as a salesman and was the only person affected by that action. Prior to July 30, 1936, Ditzler had received, without previous authority of the board of directors, the sum of $3,000 which he now claims the right to charge against the commission account voted at the July, 1936, meeting.

The total sales of the company in 1936 amounted to the sum of $175,179.39, of which $68,340 was credited to the two other salesmen of the company. There was also a scrap iron sale of $1,800 included in the total sales amount. Ditzler was credited with sales for 1936 of $103,258.64, for which he received commissions in the amount of $6,195.52. It thus appears that com-

missions were paid upon the total sales of the company for that year less the scrap iron account of $1,800 and less sales in the amount of $5,000. The company had been in business for many years and enjoyed a valuable good will which necessarily brought it much business for which the salesmen of the company were not entitled to credit.

It is plaintiff's contention that the commission account was created for the purpose of reimbursing Ditzler for expenditures actually made by him in promoting the business of the company, for which expenditures plaintiff as a stockholder of the company, is here seeking an accounting. Against this contention, Ditzler claims that under the resolution of the board he is not required to account for the commissions or to indicate how or to whom expenditures were made by him in promoting the company's business and he refuses and has refused to make any account therefor.

On the 15th of December, 1936, near the close of the corporate year, against the protest and vote of plaintiff, the directors, Millard F. Bingham, Jr., and H. A. Bresemann voted a bonus of $1,800 to Ditzler for the year 1936. Immediately after voting such bonus to Ditzler, a motion was made by Millard F. Bingham, Jr., and seconded by Bresemann that the company pay Bresemann a bonus of $1,800. Plaintiff objected and called attention to the fact that Bresemann as a director was disqualified from voting a bonus to himself. The motion was lost, having received but one affirmative vote—that of Millard F. Bingham, Jr. Without the intervention of any further corporate business, Millard F. Bingham, Jr., immediately moved the payment of a further and additional bonus of $1,800 to Ditzler for him to distribute "as he sees fit." That motion was seconded by Bresemann and carried against the vote of plaintiff. At this point there is a controversy between the parties as to what

was said with reference to the identity of the party to whom the second bonus of $1,800 was to be paid, to which controversy we shall later refer.

Shortly after the meeting, two checks were drawn upon the treasury of the company by Bresemann, each for the sum of $1,800, and both payable to Ditzler and both charged to him on salary account. On the day the checks were drawn Ditzler indorsed and delivered one of the checks to Bresemann, who received and deposited the same to his own account in the bank.

At the annual meeting of the board of directors held on the 23rd day of January, 1937, against the protest and vote of plaintiff, the other two directors voted a salary to Ditzler for that year of $9,000 with a bonus of $2,000, if the profits of the company exceeded $30,000. It is admitted by the answer that there was then every reasonable expectation that the profits of the company for that year would be in excess of $30,000. Besides the $2,000 bonus, the directors, Bresemann and Millard F. Bingham, Jr., voted a commission to Ditzler of 7 per cent on sales made by him up to $50,000, and 6 per cent on sales in excess of that amount.

After the filing of the original complaint, at a meeting held on the 17th of December, 1937, presided over by Ditzler and against the protest and vote of plaintiff, the defendants, Millard F. Bingham, Jr., and H. A. Bresemann, constituting a bare majority of the board, voted a further bonus of $1,800 to Ditzler and at the same meeting, with like protest by plaintiff, they voted to Ditzler the sum of $3,200 as bonuses to distribute at his discretion. Of this latter sum, $1,800 was shortly thereafter paid to Bresemann who was then one of the directors and secretary and treasurer of the company. The record of the company shows that in 1936 the 20 minor employees of the company received as bonuses the sum of $1,317, and in 1937, the

sum of $1,393, which latter sum was paid out of the $3,200 voted to Ditzler and which was to be distributed at his personal discretion.

Besides the two bonuses of $2,000 and $1,800 voted to Ditzler in 1937 the record shows not only the salary of $9,000 but also commissions in the amount of $7,805 received by him. In addition to these several amounts he also received for travelling and hotel expenses $2,796.18, in 1936, and $3,374.18, in 1937, besides an undisclosed amount for automobile expenses. The record shows that Ditzler received in

### 1936

| | | |
|---|---|---|
| Salary ................. | $7,200.00 | |
| Commissions ............ | 6,195.52 | |
| Expenses .............. | 2,796.18 | |
| Bonus ................. | 1,800.00 | $17,991.70 |

### 1937

| | | |
|---|---|---|
| Salary ................. | $9,000.00 | |
| Commissions ............ | 7,805.00 | |
| Expenses .............. | 3,374.18 | |
| Bonuses .............. | 3,800.00 | 23,979.18 |
| Total | | $41,970.88 |

The plaintiff suggests that the foregoing facts are not denied, and that the controversy herein arises from those facts and the legal interpretation to be applied in view of the opposing contentions of the parties.

The plaintiff further suggests that the Roller Company was acquired by the three Bingham Brothers in March, 1927, and thereafter until the annual meeting in January, 1936, its affairs were conducted and managed exclusively by Carl G. Bingham. Its first president was John L. Vette, a lawyer who had to do with the legal aspects of its purchase. He continued as president a little over a year and was succeeded by the witness McInerney, one of the company's sales-

men, who continued until the election of Carl G. Bingham in 1935.

It is further suggested that it appears from the record that prior to 1935 no commissions were paid to the company salesmen. Their expenditures for promoting the affairs of the business were paid to them from time to time in accordance with the amounts expended. In 1935 the company decided upon the establishment of a commission to be paid its salesmen and passed a resolution that such commission should be in addition to their salary but with the proviso that the "percentage would be decided later." This was an experiment and Ditzler was informed by Carl Bingham that the salesmen should continue as they had done and "make reports of the expenditures and to whom they were paid and for what purpose, for the company to have." In May or June of that year, Carl Bingham asked Ditzler for a record of the commission withdrawals and was told that he had them but they were not ready to be presented. Again in November or December he requested the record and Ditzler said he had it and upon being asked where it was replied "I have not got it." In January, 1936, for the first time Ditzler claimed that the commissions were his and he did not have to account for them. Ditzler denies the requests made upon him by Carl Bingham, but admits that Carl Bingham did ask him to account for commissions.

Carl Bingham's understanding of the commission account, established in 1935, required that commissions would cover all the selling expenses of the salesmen, and when he sought a confirmation of his understanding at the annual meeting in January, 1936, by the board of directors it was refused by Millard Bingham. Thereupon he declined to continue in the position of president and Ditzler was elected in his stead. After Ditzler's election in 1936 and for a period of 6 months and without any antecedent authority from the board

of directors he continued to draw lump sums in the total amount of $3,000, which were subsequently charged to the commission account. No corporate action was ever taken approving the payment of those sums, which were paid to him by Bresemann with no other authority than Ditzler's personal direction and were never called to the attention of the directors. Supporting the truth of Carl Bingham's testimony with reference to the necessity of Ditzler accounting for unexpended portions of commissions is the testimony of Millard Bingham, who said: "I had a conversation with him (Ditzler) in 1937 with reference to his accounting for commissions. . . . It was early in the year, I asked him if he was keeping a record of the expenses and he said he did have a record of it. I asked him where it was and he said he had it in his desk." Again on cross examination, Millard Bingham said: "Those commissions . . . are supposed to be actual expenditures made by the salesmen to promote their sales. It was not intended that the salesmen and Mr. Ditzler in particular was to retain the commissions for himself."

It also appears from the testimony of Bresemann that the commission record disappeared in March, 1938, shortly before Ditzler left the company on April 1, 1938. Upon his departure from the company, he took with him certain of the company's men. In 1936 and 1937 Ditzler received commissions in the aggregate amount of $14,000.52, and the other two salesmen who left to join the new Ditzler company in April, 1938, received commissions in the total of $10,070.66, or a grand total of $24,071.18. Ditzler claims that all this money was spent for entertainment in order to secure the good will of the company's customers. It is suggested by plaintiff that if the testimony of Ditzler is true the net result is that the money of the Chicago Roller Company has been largely spent for the benefit of its rival and competitor, the American Roller Com-

pany, of which Ditzler is now president and a stockholder. Ditzler admits that some of these customers, whom he entertained and with whom he spent the company's money, have now followed him into his new company.

The defendant Ditzler has refused and failed to account for commissions paid him in 1936 and 1937, and it is suggested by plaintiff that he has practically confessed his inability to make an accounting.

In the consideration of the questions that are involved in this controversy it is important that we have before us the findings of the court and the decree which are the subject of this appeal. All findings that we will consider, of course, are those pertinent on the questions involved. The first finding of the court in its decree is that the Chicago Roller Company is an Illinois corporation, with a capital stock of $10,000, and finds the organizational setup of this company as well as the share holders and the amount of shares they each had, which is not the subject of any controversy in this case. The court then goes on to find that during the years 1935, 1936 and 1937 the board of directors of said company consisted of the plaintiff, Mary S. Bingham, and the defendants, Millard F. Bingham, Jr. and H. A. Bresemann, being all of the directors of said company. That during the year 1935, the officers of said company consisted of Carl G. Bingham, president; the defendant, H. L. Ditzler, vice president and sales manager; and the defendant, H. A. Bresemann, secretary and treasurer. Further, that the officers of the company for the years 1936 and 1937 consisted of the defendant, H. L. Ditzler, as president, and the defendant, H. A. Bresemann, as secretary and treasurer. That the directors of the company for the year 1938 were Carl G. Bingham; the defendant, Millard F. Bingham, Jr. and Samuel A. Bingham, being all of the directors of said company. The decree goes on to find that the master in chancery has found in and

by his report that on the 15th of December, 1936, a motion was made by Millard F. Bingham, Jr. and seconded by H. A. Bresemann, that the company pay Ditzler a bonus of $1,800, which said motion was carried against the protests of the plaintiff. There was also a motion made by Millard F. Bingham, Jr. and seconded by Bresemann that the company pay Bresemann a bonus of $1,800. That the plaintiff called attention to the fact that Bresemann, as director of the company, had no right to vote for a bonus for himself, and the motion was not carried. That at the same meeting an additional bonus of $1,800 was voted to Ditzler to be distributed by him as he saw fit. The plaintiff objected to the voting of said bonus, but the motion was carried. The bonuses voted to Ditzler were paid to him in two checks of $1,800 each, one of which checks he endorsed and delivered to Bresemann.

- The court further found that after the filing of the original complaint, at a meeting held on the 16th day of December, 1936, Ditzler presided as president. The defendants, Millard F. Bingham, Jr. and H. A. Bresemann constituting a majority of the board, voted a further and additional bonus of $1,800 to Ditzler and at the same meeting, over the protest of the plaintiff, they voted Ditzler the sum of $3,200 as bonuses to be distributed at his discretion, of which said sum of $1,800 thereof was shortly thereafter paid to Bresemann. Out of the said sum of $3,200, Ditzler paid the various employees bonuses aggregating $1,393. That the master has recommended that said bonuses aggregating the sum of $3,600 so voted and paid to the defendant, H. A. Bresemann, should be returned to the treasury of said company by reason of the fact that the voting of said bonuses was made possible by the controlling vote of the defendant, H. A. Bresemann, who was, at said several times, one of the directors of said company and legally disqualified from voting to him-

self any of the corporate money of said the Chicago Roller Company against the protest and negative vote of the plaintiff. Further, that while said bonuses were ostensibly voted for the benefit of persons other than the defendant, H. A. Bresemann, the defendants H. L. Ditzler, Millard F. Bingham, Jr. and H. A. Bresemann, who participated therein, knew that such bonuses were intended for and would be paid to the defendant, H. A. Bresemann, and that after the same were voted, the defendant, H. L. Ditzler, with full knowledge of the manner in which the same had been voted, paid the same to the defendant, H. A. Bresemann, out of and with the money of the company.

The court then finds as a matter of law that the voting of said bonuses to the defendant, H. A. Bresemann by the said defendants, Millard F. Bingham, Jr., and H. A. Bresemann, and the payment of the same by the defendant H. L. Ditzler was without legal justification and in fraud of the rights of said company and that the said defendants last named are severally and jointly liable therefor and should be required to return and repay the same to said company. The court further finds that the board of directors of said company on the 30th of July, 1936, against the protest and vote of the plaintiff, the defendants, Millard F. Bingham, Jr. and H. A. Bresemann, acting as directors of said company, voted a commission of 7 per cent to the officers of said company acting as salesmen on sales up to $50,000 and on sales in excess of $50,000, a commission of 6 per cent for the year 1936 which commissions were to be in addition to the salaries received by said officers during the year 1936. That in pursuance to said action by said board of directors, and a similar action taken by said board in January, 1937, the defendant, H. L. Ditzler, as president of said company and acting as one of its salesmen, was paid commissions during the year 1936 in the amount of $6,192.52 and $7,805, during and for the year

1937. That said commissions were voted for and intended to reimburse said defendant, H. L. Ditzler, for expenditures actually made by him in promoting the business and affairs of the company and that any amount in excess of actual expenditures made by him should be returned and prepaid to the company. The court, therefore, found that said defendant, H. L. Ditzler, should be required to account for all moneys received by him as commissions and that any excess over and above actual expenditures made by him out of said commissions for selling and promotional expenses should be returned and repaid to the company by said defendant, H. L. Ditzler, and that said Ditzler and the defendants, Millard F. Bingham, Jr. and H. A. Bresemann, should be held severally and jointly liable therefor. The court, therefore, found that the report and recommendation of said master in chancery ''should be and the same is hereby in all respects sustained, approved and confirmed, and the several exceptions of the plaintiff and the defendants to said report are hereby overruled and disallowed.''

The court then finds that the master's fees in the amount of $598.75 heretofore taxed as costs herein have been advanced and paid to the master by the plaintiff and that plaintiff should have judgment for said sum, together with all other taxed costs, against the defendants who are severally and jointly liable therefor. The court then further finds that while the question of the right of the plaintiff to recover attorneys' fees herein has not been raised or argued either before the court or the master, except by motion of the plaintiff filed herein without argument, yet the court finds that jurisdiction of this cause should be reserved for the purpose of determining the right of the plaintiff to be reimbursed for the fair and reasonable value of her attorney's fees necessarily expended in prosecuting this cause to a conclusion and for the purpose of hereafter deciding and determining the right

of the plaintiff to be so reimbursed and the value of the services rendered by the plaintiff's attorney, and whether or not such fee should be paid to the plaintiff by the defendant, the Chicago Roller Company, or by the defendants, H. L. Ditzler, H. A. Bresemann and Millard F. Bingham, Jr., as the court may hereafter decide and determine.

In conclusion of its findings, the court ordered, adjudged and decreed that the defendants, H. L. Ditzler, Millard F. Bingham, Jr. and H. A. Bresemann are severally and jointly liable to the defendant, the Chicago Roller Company, in the sum of $3,600 heretofore found to have been unlawfully paid to the defendant, H. A. Bresemann, and in default of such payment within 3 days after the entry of the decree that execution issue in favor of the defendant, Chicago Roller Company, against the defendants, H. L. Ditzler, Millard F. Bingham, Jr., and H. A. Bresemann, severally and jointly for said sum of $3,600, together with all court costs. The court further ordered that the defendant H. L. Ditzler, should render a full, fair and complete accounting of all moneys received by him as commissions during and for the years 1936 and 1937 and should return and repay to the Chicago Roller Company all moneys so received in excess of the money actually expended by him for selling and promotional expenses made by him on behalf of said company, for which accounting purposes further jurisdiction of this cause is hereby reserved. The cause was referred to a master in chancery for the purpose of taking testimony with reference to the accounting to be made by the defendant, H. L. Ditzler, in connection with the commissions received by said defendant during the years 1936 and 1937.

The above findings as far as we have indicated are the subjects to be considered by this court upon the questions involved. The first point we wish to take up is the argument of defendants that plaintiff cannot

maintain a suit to set aside a transaction which is within the powers of the board of directors to pass or the majority of the stockholders to ratify, and the cases cited as supporting this contention. It is suggested that the actions of the directors cannot be attacked at the mere whim of a stockholder. Under this argument, defendants further suggest that a stockholder is within his rights in attempting to influence the action of the board of directors. It might be said on this question that the suit that was instituted by the plaintiff is not for her own benefit but is for the purpose of requiring these defendants to account for moneys they had received together with certain bonuses that were improperly—as suggested—paid to Ditzler and Bresemann. It is apparent that demand was made on the corporation to take action upon the questions that we have before us, and the corporation after demand having failed and refused to institute a suit, the plaintiff as a stockholder then acquired the right to commence an action to effect the return to the company of the moneys wrongfully paid. The plaintiff, in support of this proposition, calls attention to the general rule that is stated in Pomeroy's Equity Jurisprudence (3d Ed.) Sec. 1095:

"The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his,* or because *he* is entitled to the relief sought; he is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.* The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff. The corporation is, therefore, an indispensably *necessary* party, not simply on

the general principles of equity pleading in order that it may be bound by the decree, but in order that the relief, when granted, may be awarded to it,.as a party to the record, by the decree." In support of this proposition also, the case of *Voorhees v. Mason,* 245 Ill. 256, is cited, wherein the court at page 264 said:

"The bill in this case was filed to require the directors to account to the corporation and not to account to the complainant and the complainant having called upon the directors to account to the corporation, and they having declined to sue themselves in the name of the corporation, the bill for an accounting between the directors and the corporation was rightfully filed by the complainant as a stockholder. (*City of Chicago v. Cameron,* 120 Ill. 447; *Bruschke v. Der Nord Chicago Schuitzen Verein,* 145 Ill. 433.)" And in support of this rule there is also cited the case of *Seitz v. Michel,* 148 Minn. 80. It is apparent from the citations that are before us that the action that is here on appeal was properly instituted by the plaintiff, and, from the relief granted by the decree, the moneys are to be paid to the corporation and not to the plaintiff.

But defendants contend that the plaintiff is seeking to injure and destroy the Chicago Roller Company, thereby calling into play motives of bad faith. It is well stated by the plaintiff that a conclusive answer to this fallacious contention is found in the undisputed fact that the sole purpose of the present suit is to secure a return to the treasury of the company of a substantial sum of money which has been diverted and improperly expended. The return of such money will necessarily be beneficial and in nowise injurious. There is a contention by defendants that as an evidence of bad faith, the plaintiff's husband sought to and suggested to Ditzler that he better go with the company with which plaintiff's husband was connected, and that such suggestions to Ditzler were for the purpose of injuring the defendant company. It is well to have

in mind, however, that Ditzler left the defendant company and in leaving took with him several employees of the defendant company together with some of the salesmen, and went to work for the competitor company, with which Ditzler is connected, known as the American Roller Company. It would seem, therefore, that this defendant and those connected with him are not in a very good position to complain of bad faith on the part of the plaintiff, when they, by their actions, have so interfered with the conduct of the business of the defendant company. As to the suggestions of the propriety of the findings that were entered by the court in its decree, we have indicated the facts that were presented, and it seems upon these questions that we have before us that the evidence supports the findings and that the court was fully justified in making same.

There is, however, the question that moneys have been received by Ditzler, which he refuses to account for to the company, and explain for what purpose they were used. That seems to be the subject of this litigation in part. He was an officer and employee of the defendant company and it was his duty to render an account. Instead of that, demands were made but he never did account and it would seem that the court in its finding and decretal order was justified upon the facts that are in this record. As to the amounts that were allowed to Bresemann under the peculiar conditions that appeared, when objection was made to the payment of an $1,800 bonus as proposed, and when objection was made by plaintiff that Bresemann could not vote upon the resolution that directed the payment of the $1,800 to him, then the president and Millard F. Bingham, Jr., voted upon a motion to pay the $1,800 to Ditzler and have him to distribute same as he saw fit. The clear purpose of this was to avoid the objections that were made and it does seem that it was a subterfuge for the board of directors to pass upon

a motion of the type that was presented. It was then that Ditzler indorsed and turned the check over to Bresemann. It seems therefore that the court was justified in this respect in ordering the money repaid.

There is one further question to be considered by the court as to whether the managing officers and directors of the defendant corporation, as trustees for the stockholders, are accountable for all their breaches of trust as complained of in this appeal. In the case of *Dixmoor Golf Club, Inc. v. Evans,* 325 Ill. 612, the court said:

" . . . The law is well settled that a trustee cannot without a breach of the trust deal with its subject matter in such a manner as to make a profit for his own benefit. It requires no very keen moral perception to recognize the obvious justice of this universal rule of law, of justice and of morality. The directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation. (*Farwell v. Pyle-National Electric Headlight Co.,* 289 Ill. 157.) The stockholders are entitled to the utmost fidelity of the directors to the interest of the stockholders. It is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those they represent. (*Gilman, Clinton and Springfield Railroad Co. v. Kelly,* 77 Ill. 426; *Hooker v. Midland Steel Co.,* 215 id. 444.) A director of a corporation cannot become the purchaser of property of the corporation which it is his

duty to sell. (*Chicago Hansom Cab Co. v. Yerkes,* 141 Ill. 320.) He is subject to the ordinary rule that an agent to sell cannot sell to himself, and an agent to buy cannot buy of himself. The interests of buyer and seller are inconsistent, and an agent cannot represent both interests at the same time. While a director is not disqualified from dealing with the corporation and buying its property or selling property to it, he must act fairly and be free from all fraud or unfair conduct, his transactions will be subjected to the closest scrutiny, and if not conducted with the utmost fairness, to the end that the corporation shall have received full value, they will be set aside." The application of the law as suggested by the Supreme Court is apt when we consider that the officers, as indicated in this opinion, have been called upon by the court to account for the moneys received from the defendant company, and the court, as we have stated before, was fully justified in entering the decree which called upon the directors in question jointly and severally to account for the moneys that were received, such accounting to be for the benefit of the defendant company, Chicago Roller Company.

It is for the reasons stated in this opinion that we believe that there is not error in the record which would justify this court in reversing the decree, and, therefore, the decree is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN and BURKE, JJ., concur.

## ON REHEARING.

A petition for rehearing having been filed by the defendants (appellants), to which the plaintiff (appellee) filed an answer, it is called to our attention by the defendants that this court in its opinion overruled or misapprehended certain facts as shown by the record, some of which were found by the master, and

further that the court misapprehended one of the principal points relied upon by the defendants for the reversal of the decree.

After careful consideration of the petition for rehearing and the answer thereto on the questions involved, we are of the opinion that the matter is disposed of by the decree that was entered by the chancellor. This court having affirmed that decree, there is nothing that would further justify our reviewing the questions submitted. The questions complained of in the petition for rehearing are not of controlling importance, and the erroneous statement alleged to have been made in the opinion is wholly immaterial.

Upon point two, counsel for defendants take exception to statements in plaintiff's brief concerning commissions which were paid to defendant Ditzler and challenge our statement in the opinion by saying that "the figure of $5,000 that appears in this paragraph appeared nowhere in the record of this case, except on page 3 of the plaintiff's brief." The reply of the plaintiff to this assertion is that since counsel (for defendants) have made the bold assertion that the figure of $5,000 appears nowhere in the record "we think we are justified in calling the court's attention to what the record shows in that respect. The abstract of Bresemann's testimony at page 69 omits a portion of the record which shows that Mr. Thompson himself there fixed the sum of $5,000 as that part of the sales upon which no commission was paid." Upon due consideration of the questions before the court there seems to be a controverted question on this $5,000 item. However, we have affirmed the chancellor's decree and we there said in our opinion that the court was fully justified in entering the decree which called upon the directors in question jointly and severally to account . . . such accounting to be for the benefit of the defendant company. Such accounting having been directed by the decree, the adjustment

of the figures that go to make up the account will be made on such an accounting and will for all purposes carry out the terms of the decree.

There are further questions raised as to the reference that the commission records disappeared shortly before defendant Ditzler left the company. Upon further consideration of the facts before us in this regard, we do not believe it necessary to further consider this argument other than to say that we are of the opinion that under the decree requiring an accounting, the adjustment of the items between the parties will be carefully considered. There is also the question of the right of a board of directors to authorize their salesmen to pay their own expenses based upon the commission on their sales, which defendants complain that the court did not pass upon. In our opinion there has been no question raised as to the right of a board of directors to provide different methods of payments to their salesmen so long as their action is disinterested and free from fraud.

Having considered these questions, it will not be necessary to further take up the items complained of, since we feel that the opinion in affirming the decree is supported by the findings as well as the evidence in the record. Therefore, there is nothing in defendant's petition for rehearing so far as the law and facts are concerned that requires any modification of our opinion heretofore filed.

For the reasons stated, the relief prayed for in the defendants' petition for rehearing is denied.

*Prayer of petition for rehearing denied.*
DENIS E. SULLIVAN and BURKE, JJ., concur.

ON REHEARING.

To the petition for rehearing of Mary S. Bingham, appellee and cross appellant, which was allowed by the court, the defendants appellants did not file an answer.

The question that is called to our attention by the plaintiff is that the court failed to pass upon the cross errors and calls our attention to the following errors that were assigned; (1) the failure of the chancellor to decree the return to the company of two bonuses of $1,800 each voted and paid to defendant, Ditzler, at the end of the corporate years in December, 1936 and 1937, and (2) the refusal of the trial court to require the return of a salary excess of $600 and a provisional $2,000 bonus paid to Ditzler for the year 1937.

While it is true that we did not expressly call attention in our opinion to the errors here assigned, we did however approve the decree of the chancellor in passing upon the questions. We affirmed the decree that was entered, and, in order to clarify the record, we do here, after due consideration, deny the above cross errors of plaintiff. Under the circumstances the court will adhere to its opinion heretofore filed herein, affirming the decree of the chancellor.

For the reasons stated, the relief prayed for in the plaintiff's petition for rehearing is denied.

*Prayer of petition for rehearing denied.*

DENIS E. SULLIVAN and BURKE, JJ., concur.