Highway Insurance Company (Formerly Metropolitan Insurance Company), Plaintiff-Appellant, v. Clyde L. Korman, Defendant-Appellee.

Gen. No. 48,513.

First District, First Division.

March 25, 1963.

Rehearing denied May 20, 1963.

440

Dallstream, Schiff, Hardin, and Waite & Dorschel, of Chicago (Albert E. Hallett, John B. Robinson, Jr., W. Donald McSweeney, Alexander Polikoff and John L. Fogle, of counsel), for appellant.

Russell J. Topper, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff's complaint and amended complaint were both stricken, and, after a hearing on defendant's motion to strike a second amended complaint, the trial court again concluded that plaintiff had not stated a cause of action. An order was, therefore, entered striking the second amended complaint without leave to amend further, and the cause was dismissed. Plaintiff appeals.

Although part of plaintiff's brief questions the sufficiency of defendant's motion to strike, we shall consider the case, as did the trial court, on the question of whether or not the complaint itself states a cause of action. The facts to be recited in this opinion will be those alleged in the complaint, since those allegations, together with reasonable intendments therefrom, are to be taken as true for the purposes of this appeal. (Doner v. Phoenix Joint Stock Land Bank of Kansas City, 381 Ill 106, 112, 45 NE2d 20; Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 541, 165 NE2d 346.)

442

■■ In reviewing the facts, we consider ourselves to be guided by two provisions of the Practice Act. They are:

> Pleadings shall be liberally construed with a view to doing substantial justice between the parties. (§ 33(3).)
>
> No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet. (§ 42(2).)

And, since defendant's motion is not supported by any affidavits, the grounds for the motion must appear on the face of the complaint. (§ 48(1).)

The complaint has to do with the relations between defendant and plaintiff insurance company * from 1942 to 1958. Defendant was vice-president of plaintiff, a member of its board of directors, and, with Harry V. Gralnek, a member of its two-man finance committee. Defendant's duties included collection of premiums and other fees due to plaintiff, and supervision of its records with respect thereto. As members of the finance committee, defendant and Gralnek directed the financial and investment portions of plaintiff's business. Gralnek, who was also a director, was plaintiff's secretary and treasurer, and was responsible for receipt of all funds paid to plaintiff.**

(Count I) R. C. Brusslan & Co., a partnership, did business as insurance agents, selling policies written by plaintiff. Brusslan, on behalf of plaintiff, collected premiums due to plaintiff from assureds under policies written by plaintiff. In late 1948 or early 1949, Gralnek told Brusslan that money thus collected by Bruss-

---

* A corporation organized under the laws of Illinois, and carrying on an insurance business in Cook County.

** The allegations recited in this paragraph are incorporated in all five counts of the complaint, the specific allegations of which are summarized in the ensuing paragraphs.

lan on behalf of plaintiff and so due to plaintiff should be paid by checks payable to Gralnek. Brusslan, thereafter, did deliver to Gralnek, in payment of money thus due to plaintiff, checks and drafts payable to Gralnek personally, and he deposited them, not in plaintiff's account, pursuant to his duty as plaintiff's treasurer, but in various banks to the credit of his own individual account. A list of such checks so delivered during the period May, 1955 to April, 1958 is attached to the complaint, and the amounts thereof total $683,744.63. Other similar checks aggregating some $600,000 were also thus delivered and deposited, but plaintiff did not yet have specific data on them.

Approximately half of this money was paid by Gralnek to defendant, who knew of and encouraged these payments by Brusslan, and, in fact, expressly directed Brusslan on numerous occasions to make such payments to Gralnek. A partial list of such payments to defendant by date and amount (totalling more than $200,000) is attached to the complaint, and additional amounts were so paid, but plaintiff did not yet have specific data as to such payments. Defendant received such payments from Gralnek knowing that the money belonged to plaintiff and he wrongfully appropriated it to his own use.

Defendant and Gralnek disguised and concealed their misappropriation of this money by false and misleading statements to other officers and employees of plaintiff, and by false, fraudulent, inaccurate and incomplete entries in plaintiff's books and records. They reconciled the Brusslan account on plaintiff's books by unlawfully crediting to it various receipts from other sources. Plaintiff first learned of these misappropriations and fraudulent actions in 1958, and complaint was filed in January, 1959.

(Count II) Defendant and Gralnek, as partners, also carried on an insurance agency business under the

name of "The Highway Agency." This agency sold insurance written by plaintiff, collected premiums and remitted them to plaintiff, and received from plaintiff commissions earned, from time to time. Prior to May 31, 1958, defendant and Gralnek, as vice-president and treasurer, respectively, and despite their fiduciary relationship with plaintiff, caused plaintiff to pay to The Highway Agency advances against commissions to be earned by the agency in the future. On the date referred to, the amount of this overdraw against unearned commissions was $125,312.88. In June, 1958 a statement of such account was rendered by plaintiff to defendant, as a partner of the agency, but he and Gralnek have failed and refused to pay the amount due.

(Count III) Defendant, as vice-president of plaintiff, and despite his fiduciary obligations as such, at various times caused checks to be drawn on plaintiff, and plaintiff's money thus wrongfully paid out in satisfaction of plaintiff's own personal debts and those of his family and friends. These checks were so drawn without authorization by plaintiff's board of directors, and defendant falsified plaintiff's records to indicate that the checks had been drawn in payment of policy claims against plaintiff. This deception was not discovered until October, 1958. A list of some 125 such checks, with amounts, dates and payees, is attached to the complaint, and there are many more as to which plaintiff did not yet have specific data. Plaintiff has not been reimbursed for any of these expenditures.

(Count IV) Defendant knew that Gralnek was misappropriating plaintiff's funds to his own use; that Gralnek, as a general partner of The Highway Agency, owed plaintiff $125,312.88; that Gralnek was using plaintiff's funds for payment of his own personal debts and those of his family and friends; that Gralnek had not repaid to plaintiff the sums thus misappropriated

445

by him from time to time. Despite this knowledge and despite defendant's fiduciary obligation to plaintiff, defendant did not disclose this information to the board of directors or other responsible officers of plaintiff, and took no action to stop or prevent such unlawful dissipation of plaintiff's funds by Gralnek or to recover such funds from him. On the contrary, defendant negligently and improperly failed to perform his duties to plaintiff, and concealed the misappropriations through the falsification of records and otherwise, as a result of which plaintiff sustained loss and damage in the amount of $2,000,000.

(Count V) Through defendant's breaches of his fiduciary obligations to plaintiff, he diverted large amounts of plaintiff's funds to his own purposes. Because of his concealment of such unlawful acts through alteration and destruction of plaintiff's records, the full extent of plaintiff's damages cannot be determined without an accounting by defendant. Defendant is a constructive trustee of the money and property of which plaintiff has thus been defrauded by defendant, and plaintiff is entitled to restitution or the declaration of an equitable lien on the proceeds and profits of such fraud.

Defendant contends as to Count I that it does not state an action against him because it does not show that the allegedly misappropriated funds ever belonged to plaintiff. It is his theory that Brusslan collected premiums as agent of the assureds, not as agent of plaintiff; that the payment of these amounts to Gralnek instead of to plaintiff left a simple debtor-creditor relationship between Brusslan and plaintiff; and that plaintiff can recover from Brusslan the amounts which it seeks to obtain in this suit from defendant.

It should be remembered that Count I alleges that Brusslan collected the premiums due to plaintiff "on plaintiff's behalf." That is a clear allegation of an

446

agency relationship between Brusslan and plaintiff; and moneys so collected by Brusslan would immediately become plaintiff's property.

■ Further, Gralnek, as plaintiff's treasurer, was its authorized agent to accept payment of premiums due, and payment to him constituted payment to plaintiff as his principal. (Scott v. Gilkey, 153 Ill 168, 174, 39 NE 265.) This result obtains even though payment be made to the agent personally. (Hoiden v. Kohout, 12 Ill App2d 161, 164, 138 NE2d 852.)

Thus, the money which Gralnek and defendant diverted from plaintiff and divided among themselves was money belonging to plaintiff, and Count I sufficiently alleges breach of fiduciary responsibilities and conversion.

Defendant's liability under this count as a director and officer, and therefore as a fiduciary, is well stated in 3 Fletcher, Corporations, § 1102, pp 656, 660:

> There is little or no controversy as to the liability in general of directors or other corporate officers for misappropriation, diversion, or conversion of corporate assets. . . . Directors are liable for actual misfeasance in appropriating corporate funds to their personal use, where that was the legal effect of their acts no matter by what name they were called, and they become constructive trustees for the benefit of the corporation.

■ We fail to perceive, however, how defendant would gain advantage even if the complaint did not adequately allege plaintiff's ownership of the misappropriated funds. We conceive defendant's obligations to plaintiff to have been fiduciary in character and, consequently, any breach thereof is subject to the broad aspects of liability for betrayal of trust. At the base of the entire complaint we find the high degree of accountability undertaken by any corporation director or officer upon his assumption of office.

447

Our courts have outlined this responsibility in count-
less cases. We shall refer to only a few.

In Doner v. Phoenix Joint Stock Land Bank of Kan-
sas City, 381 Ill 106, 113, 45 NE2d 20, the court said:

> The rule in this State is established by an un-
> broken line of decisions that anyone occupying a
> fiduciary relation . . . cannot deal on his own ac-
> count with any thing or the persons falling within
> that trust relationship. If anyone occupying such
> a relation deals with the subject matter of the
> relationship and thereby gains an advantage to
> himself he will be deemed guilty of fraud, either
> actual or constructive, depending upon his intent
> and purpose . . . Defendant Westervelt has made
> no effort to deny the relationship nor to establish
> by any proof that he has not betrayed his trust.
> On the contrary he has, by his motion to strike,
> admitted such facts to be true . . . .

Earlier, the Supreme Court had said in Farwell v.
Pyle-National Elec. Headlight Co., 289 Ill 157, 164,
124 NE 449:

> There is here no purchase of property from or
> by the corporation or contract between the direc-
> tor and the corporation which is sought to be set
> aside, but the rule in regard to the duty of direc-
> tors, as trustees for the stockholders, reaches fur-
> ther than to transactions occurring directly be-
> tween the directors and the corporation . . .
> [The rule embraces every relation in which there
> may by any possibility arise a conflict between
> the duty to the person with whom the trustee is
> dealing or on whose account he is acting and his
> own individual interest.

And in Shlensky v. South Parkway Bldg. Corp.,
19 Ill2d 268, 278, 166 NE2d 793, the court quoted with
approval the following statement it had made in Dix-

moor Golf Club, Inc. v. Evans, 325 Ill 612, 616, 156 NE 785:

> The directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation . . . .

This court made a similar pronouncement in Winger v. Chicago City Bank & Trust Co., 325 Ill App 459, 474, 60 NE2d 560:

> Equity courts have long imposed upon fiduciaries and trustees a liability that is beyond the mere equitable right of the beneficiaries. In this class of cases honesty and morality are coextensive with equity. No profit or advantage in the handling of trust property will escape the searching eye of the equity court.

See also Chicago Title & Trust Co. v. Munday, 297 Ill 555, 560, 131 NE 103, and Auer v. Wm. Meyer Co., 322 Ill App 244, 258–260, 54 NE2d 394.

As to Count II defendant argues that the unrepaid advances from plaintiff to defendant's and Gralnek's Highway Agency cannot be made the basis of a cause of action unless it be alleged that the advances themselves were improper.

Again, this is much too narrow an approach to problems arising from the corporate officer and corporation relationship. Under the principle declared in Winger v. Chicago City Bank & Trust Co., 394 Ill

94, 109, 67 NE2d 265, the advances to the Highway Agency are presumptively fraudulent. It was there stated that "A fiduciary dealing with his beneficiaries . . . cannot benefit by dealing with them to their disadvantage. Therefore, directors of a corporation cannot acquire the property of the corporation without exercising the utmost good faith. The sale is presumptively fraudulent."

The transactions with The Highway Agency are, to be sure, only presumptively and not conclusively fraudulent. When, however, dealings between directors and their corporations are questioned, "the directors who would sustain the challenged transaction have the burden of overcoming the presumption against the validity of the transaction by showing its fairness." (Shlensky v. South Parkway Bldg. Corp., 19 Ill2d 268, 280, 166 NE2d 793.)

In a situation quite similar to the one in the case at bar, where a corporate officer refused to explain certain "commissions" he had received, this court said, in Bingham v. Ditzler, 309 Ill App 581, 596, 33 NE2d 939:

> There is, however, the question that moneys have been received by Ditzler, which he refuses to account for to the company, and explain for what purpose they were used. That seems to be the subject of this litigation in part. He was an officer and employee of the defendant company and it was his duty to render an account.

On the face of the complaint, plaintiff is entitled to an explanation and an accounting from defendant under Count II.

It is difficult to imagine a more flagrant breach of trust than that alleged in Count III in which defendant is charged with using plaintiff's corporate funds to pay his personal expenses. We adopt the statement made in 3 Fletcher, Corporations, § 1109:

450

Directors or other corporate officers have no authority to use corporate funds to pay their private debts, . . . and "the rule that an agent can-not use the property of his principal to pay his own debt applies to agents of every grade. The director of a corporation is no more exempt from this rule than the humblest agent in its service."

Defendant's brief makes no attempt to point out wherein Count III is deficient, nor was it mentioned in oral argument. We believe it states a cause of action. In considering the sufficiency of Count IV, it could be borne in mind that defendant participated in Gralnek's misappropriation of plaintiff's funds and helped him to conceal them. However, even if defendant had not thus been a participant in Gralnek's unlawful conduct, but had only stood silently by and done nothing, he would be charged with legal accountability to the corporation under all the circumstances. Winger v. Chicago Bank & Trust Co., 394 Ill 94, 111, 67 NE2d 265, likens corporate directors to trustees, and the shareholders to trust beneficiaries, and then sets forth the following rule applicable to the situation presented by Count IV:

And as a further guard to the rights of cestui que trustent equity holds defaulting trustees jointly liable, and will not permit one trustee to sit idly by and acquiesce in the fraudulent actions of another trustee; and this is particularly true where benefits accrue to him by reason of such acquiescence. (People v. Small, 319 Ill 437; Dixmoor Golf Club v. Evans, 325 Ill 612.)

Similar language was used in Chicago Title & Trust Co. v. Munday, 297 Ill 555, 561, 131 NE 103, where it was held that inaction by directors created a cause of action when they possessed knowledge of fraudulent use of the corporation's funds by others.

451

Defendant contends that the charges against him in Count IV, alleged to have begun in 1942, are barred by the Statute of Limitations. This argument cannot prevail against a claim based on fraud, and arising out of a trust relationship.

As was stated in Ellis v. Ward, 137 Ill 509, 520, 25 NE 530:

> [N]o lapse of time is a bar to a direct or express trust, as between the trustee and cestui que trust . . . and such appears to be the relation established by law between directors and the corporation . . . The Statute of Limitations therefore presented no bar to a recovery . . . .

We also refer again to this court's opinion in Winger v. Chicago City Bank & Trust Co., 325 Ill App 459, 486, 60 NE2d 560:

> Martin was in a fiduciary relationship to the company and was . . . under a duty to disclose the facts concerning his receipt of this money to the company. Our courts hold that the failure to use diligence is excused where there is a relation of trust and confidence rendering it the duty of the party committing fraud to disclose the true facts to the person whose trust and confidence has been abused. In such cases the statute of limitations or the beginning of the running of time upon which laches can be predicated only arises when the fraud is discovered. The counterclaim by the company was filed within a reasonable time after the discovery of the fraud perpetrated by Martin, and therefore neither the statute of limitations nor the doctrine of laches can be invoked herein as a bar to the claim of the company.

To the same effect are Anderson v. Lybeck, 15 Ill2d 227, 154 NE2d 259; and Auer v. Wm. Meyer Co., 322 Ill App 244, 54 NE2d 394.

452

In any event, laches * would be an inappropriate defense here because the complaint clearly states that plaintiff did not learn of defendant's unlawful activities until 1958 (in part, at least, because of defendant's concealment), and suit was started in 1959.

 Through Count V, plaintiff seeks an accounting in equity. We conclude that the allegations of this count set forth grounds which have been repeatedly declared sufficient to entitle plaintiff to this type of relief. In Mayr v. Chesman & Co., 195 Ill App 587, 601–602, this court said:

> This is a bill for a discovery and an accounting. It is predicated upon three well recognized grounds of equitable relief, viz.: fraud, fiduciary relations and numerous and complicated accounts.
> . . .
> . . . "Courts of equity have jurisdiction to compel an accounting, although the complainant has an adequate remedy at law, where fiduciary relations exist, or fraud is charged, or a discovery is sought."

Bingham v. Ditzler, 309 Ill App 581, 33 NE2d 939, is also in point. There, we said at page 596:

> [M]oneys have been received by Ditzler, which he refuses to account for to the company, and explain for what purpose they were used. That seems to be the subject of this litigation in part. He was an officer and employee of the defendant company and it was his duty to render an account.

Facing the need of such an accounting, it appears to us that plaintiff's remedy at law would be inadequate. (Ohlendorf v. Bennett, 241 Ill App 537, 543,

---

* The doctrine relevant to a claim in equity, rather than the Statute of Limitations.

453

547; Pennsylvania Tank Line v. Jordan, 260 Ill App 397, 401.)

In the light of the principles under which we set out to examine the complaint, we find that it meets the necessary requirements and states a cause of action in each of the five counts. Defendant should be required to answer. (Hall v. Gruesen, 22 Ill App2d 465, 468, 161 NE2d 345; Crosby v. Weil, 382 Ill 538, 548, 48 NE2d 386; Annerino v. Dell Pub. Co., 17 Ill App2d 205, 210, 149 NE2d 761; Field v. Oberwortmann, 14 Ill App2d 218, 221, 144 NE2d 637; Chapman v. Northern Trust Co., 13 Ill App2d 386, 390, 141 NE 2d 744.)

The order of the Circuit Court is reversed and the cause is remanded for further proceedings in equity consistent with the views we have expressed in this opinion.

Reversed and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.