Continental and Commercial National Bank of Chicago v.
George E. Ricker et al., Defendants, Thomas Lynn, R. C.
Healy and L. M. Breeland, Appellants.—49 S. W. (2d) 20.

Division Two, April 8, 1932.

*Charles O. French* and *James M. Johnson* for appellants.

76

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, Thomas H. Reynolds, Winston H. Woodson* and *Geo. O. Pratt* for respondent.

WESTHUES, C.—This suit is based on a promissory note. The trial court directed a verdict for plaintiff. The amount, found to be due, according to the verdict of the jury, was forty-one thousand two hundred and forty-four dollars and fifty-eight cents ($41,244 58). After unsuccessfully moving for a new trial, appellants perfected an appeal to this court. Respondent, Continental and Commercial

National Bank of Chicago, was the original payee of the note. The National Farms Estate, a common-law trust, was the maker of the note. George E. Ricker, L. C. Smith, Thomas Lynn, R. C. Healy, L. M. Vreeland and Jay M. Jackson were guarantors on the note. L. C. Smith was adjudged a bankrupt, prior to the filing of the suit, and was not made a party defendant. A claim, for the amount due on the note, was filed against the bankrupt estate. George E. Ricker was made a party defendant, but filed an answer alleging that he had been duly adjudged a bankrupt and had applied for a discharge of his obligations in the bankruptcy court, and asked the State court to stay the proceedings, on the note against him, until such time when his application for discharge would be acted upon. Jay M. Jackson, defendant, against whom a judgment was entered, did not join in the application for an appeal. R. C. Healy, L. M. Vreeland and Thomas Lynn, all guarantors on the note, appealed from the judgment against them. Hereafter, they will be referred to as appellants.

There was pledged with respondent, as collateral security, for the payment of the note sued on, sundry notes aggregating thirty thousand dollars ($30,000), secured by mortgages on lands in Arkansas and Kansas; also notes of the face value of approximately sixty-three thousand dollars ($63,000), secured by mortgages on lands in the State of Florida. Respondent's petition alleged that the National Farms Estate executed and delivered a note to plaintiff, on February 23, 1922, in the sum of forty-two thousand five hundred dollars ($42,500). The note was due and payable ninety days after date. The petition also alleged the pledging of the collateral, above mentioned, and the signing of appellants as guarantors. Payments made on the principal of the note are recited in the petition and the balance due, on December 1, 1925, was pleaded as twenty-seven thousand one hundred twenty-three dollars and nineteen cents ($27,-123.19), principal, and seven thousand three hundred and sixty-one dollars and eighty-four cents ($7,361.84), interest. Respondent asked judgment for thirty-four thousand four hundred and eighty-five dollars and three cents ($34,485.03) with interest at seven per cent, from December 1, 1925, together with attorneys' fees and costs. According to the petition, the payments on the principal of the note were the proceeds of sales of a part of the collateral pledged with the note. It is alleged in the petition that respondent had the right and authority, under the collateral pledge agreement, to sell, assign and deliver the collateral without notice, and to apply the proceeds thereof to the payment of the note. An itemized account of these sales and of the proceeds derived therefrom, was filed with the petition as an exhibit.

Appellants filed a separate answer and counterclaim. In their answer appellants alleged that they and George E Ricker, L. C. Smith and Jay M. Jackson were shareholders in the National Farms

Estate; that Ricker and Smith had undertaken to finance the National Farms Estate in its land operations in the State of Florida; that in doing so they obtained the note sued on from the National Farms Estate and also the notes and mortgages pledged as collateral security, belonging to the National Farms Estate, as well as certain notes and mortgages, which were personal property of appellants. These notes were deposited with plaintiff, as collateral security for the payment of the note sued on. The answer further alleged that Smith, Ricker and Jackson and appellants guaranteed the payment of the note sued on, by signing the guaranty agreement on the note. Appellants assert in their answer that by reason of Ricker and appellants being shareholders and beneficiaries in the National Farms Estate, which was the owner of the Florida mortgages, a fiduciary relationship existed between Ricker and appellants. Appellants further aver that, on July 20, 1925, respondent made a sale, or a pretended sale, nominally, to one Charles B. Irwin, of a part of the collateral notes, secured by Florida mortgages, and one note of three thousand two hundred and twenty-two dollars and eighty-four cents ($3,222.84), secured by a mortgage on Arkansas land; that the total value of the collateral, sold on that day, was sixty-three thousand two hundred and twenty-two dollars and eighty-four cents ($63,222.84). Appellants then allege that this collateral was sold for one thousand dollars ($1,000), and that sum credited on the note sued on; that one thousand dollars ($1,000) is grossly inadequate; that in equity and good conscience appellants were entitled to the benefit of the collateral, so sold, as a protection against their liability as guarantors for the payment of the note. Appellants plead in their answer that respondent owed appellants the duty to exercise good faith and reasonable diligence in selling the collateral; that the high market value of the Florida lands, covered by the mortgages, in July, 1925, was a matter of common knowledge, and plaintiff either knew, or by the exercise of good faith and diligence could have known, the actual value of the mortgages. Appellants then in substance plead that respondent failed to exercise good faith and reasonable diligence in collecting and disposing of this collateral, and with knowledge of the addresses of appellants, failed to notify them of the sale, on July 20, 1925; that prior to the date of the sale respondent and George E. Ricker and one Charles B. Irwin conspired together to defraud appellants. by causing a pretended sale of the collateral to be made, nominally, to Irwin. but in truth and in fact to Ricker; that respondent knew of the fiduciary relationship existing between Ricker and appellants. Appellants then prayed judgment against respondent for sixty thousand dollars ($60,000), and that respondent take nothing by its suit.

In a separate count a counterclaim is based on the allegations, as substantially enumerated above.

At the trial, respondent offered in evidence the note sued on together with the endorsements and credits and also the exhibit showing the sums realized on the collateral sold and credited on the principal of the note. On the face of the note we find the collateral security agreement. The parts which pertain to this case are as follows:

"The undersigned has deposited with said bank as collateral security for the payment of the above note. . . . sundry notes. With the right on the part of the said Bank . . ., to at any time, and from time to time, sell, assign and deliver the whole of said property and all additions thereto and substitutes therefor, or any part of said property, additions and substitutes, at any public or private sale, at the option of said Bank, or the legal holder thereof, and without advertising the same and without notice to the undersigned, . . .; and in the event of any sale or purchase hereunder, no matter by or to whom made, all notice thereof, and any and all equity or right of redemption, whether before or after sale hereunder, is hereby expressly waived."

This agreement is signed by the National Farms Estate, by and through appellants, Thomas Lynn, R. C. Healy and L. M. Vreeland, trustees of the common-law trust. The guarantors' agreement, signed by the guarantors, is as follows:

"For the value received, we, the undersigned, do hereby jointly and severally guarantee the payment of the within note at maturity, with seven per cent interest per annum from maturity until paid, and agree to pay all costs, expenses and attorneys' fees paid or incurred in collecting the same from, or in prosecuting any suit against any one or more of the makers, endorsers or guarantors of said note, and hereby waive any and all demand, notice, protest and notice of protest."

Appellant, Vreeland, was then offered as a witness for appellants and testified he was connected with the National Farms Estate, a common-law trust, whose business was selling Florida lands. The witness was then asked if he was familiar with the lands covered by the mortgages that were pledged as collateral to the note sued on. The witness answered that he was. However, this question was objected to as having no bearing on any issue in the case. The objection was sustained. Appellants then made the following offer of proof:

"MR. FRENCH: Defendants offer to prove that the note sued on by plaintiff was secured by collateral notes which in turn were secured by first mortgages on Florida land of the face value of $72,-000; that said mortgages were first mortgages on the respective parcels of land covered by them and that on July 20, 1925, the lands covered by said mortgages were of the reasonable market value of $100 per acre and that land adjoining the lands covered by said mort-

gages, all around them and mixed through them, at that time were selling for more than $100 per acre. It is further offered to prove that the defendants Vreeland, Healy, Lynn and Jackson were not notified of the foreclosure sale conducted by the plaintiff and had no actual notice thereof.

"It is further offered to show that prior to the time of that said sale the defendant, George E. Ricker, was told by an officer of the plaintiff bank here in Kansas City, Missouri, about ten days or two weeks prior to said sale, that this collateral would be sold in Chicago and in the conversation with said officer said Ricker told said officer of the plaintiff bank that the mortgages constituting collateral securities for the note sued on by plaintiff was of great value and that the lands covered by said mortgages were of the reasonable market value of at least $100 per acre. That the said officer of the plaintiff bank told Mr. Ricker that they were going to sell it at Chicago at public sale; that said Ricker told them that it would not bring its value at such a sale and that if it was going to be sacrificed he wanted to buy it; that said officer of plaintiff bank told said Ricker that they would give him notice of the sale, and that he could be present and buy at the sale if he chose to do so. That the plaintiff bank did give said defendant Ricker notice of the sale; that said Ricker failed to say anything about having received notice to the answering defendants here and would testify that he purposely refrained from telling them because he understood this property was going to be sacrificed. That defendant Ricker did go to Chicago, did attend the sale, and through an attorney named Charles B. Irwin, bought all of that collateral for the sum of $1,000, and that he paid the $1,000; defendants will also show that such collateral at that time, consisting of approximately $63,000 face value, was at that time of the reasonable market value of $63,000.

"Defendant would further prove that said Ricker was one of the guarantors on said note herein sued on, as also was one L. C. Smith, and that both said Ricker and said Smith had, prior to the time of this foreclosure sale, been adjudged bankrupt, and that Ricker is the person who prior to the execution of the note sued on had undertaken, along with said Smith, to finance the National Farms Estate, and that it was in furtherance of his efforts so to do that the note sued on by plaintiff was given, and that for that reason said Ricker occupied fiduciary relations to the answering defendants here, which fact was known by the plaintiff at the time said conversation took place here in Kansas City and at the time said sale was made."

"MR. FRENCH: There is one thing I forgot in making my offer which I wish to add, and that is the offer to prove the allegation in the counterclaim that the National Farms Estate has assigned to the answering defendants its cause of action for damages, against

plaintiff based on plaintiff's failure to use good faith and due diligence in collecting and disposing of said collateral.''

There was a lengthy objection to this offer of proof, which the court sustained. Counsel for appellants then made the following announcement:

"MR. JOHNSON: Since our offer covers all of the evidence of proof we have we are unable to proceed further under the ruling of the court.''

▮▮ Appellants, in their motion for a new trial and in their assignment of errors, present for our review the action of the trial court in sustaining the respondent's objection to the offer of proof made at the trial. For the purpose of determining the correctness of the trial court's ruling we must treat the evidence, contained in the offer of proof, as true. Sustaining the objection to the offer was equivalent to saying: "We take for granted that the offered evidence was true, yet it did not constitute a defense to plaintiff's case.''

Appellants, under their pleading, were entitled to show, by competent evidence, that respondent was a party to a conspiracy to deprive appellants of the benefit of the collateral security. If there was any evidence in the offer of proof, tending to prove that respondent, as the holder of the collateral, was a party to such a conspiracy and through a pretended sale deprived the guarantors of the benefit of the collateral, then the court erred in sustaining the objection to such evidence. ▮▮ A pledgee of collateral must act in good faith in making a sale and use due diligence in obtaining a fair price for it. If a pledgee is guilty of any breach of trust in this respect, and the guarantor is damaged thereby, the pledgee is liable for the damages sustained by the guarantor. [49 C. J. 1004, secs. 262, 263 and cases cited; National Exchange Bank v. Kilpatric, 102 S. W. 499, 204 Mo. 119; California Bank v. Daniel, 288 Pac. (Ariz.) l. c. 11 (17); Hagan v. Continental National Bank, 81 S. W. 171, 182 Mo. 319.]

The offer of proof tends in substance to show the following: First, that the mortgages, securing the collateral notes, were first mortgages on Florida land of the face value of seventy-two thousand dollars ($72,000) and that the land was of the reasonable value of one hundred dollars ($100) per acre; second, that about two weeks prior to the sale, an officer of respondent bank had a conversation with Ricker with reference to the proposed sale of the collateral; that Ricker was told and notified of the public sale to be had, and that if Ricker desired he could attend the sale and purchase the collateral; that Ricker informed the officer the collateral was valuable and would be sacrificed at a public sale and that, therefore, he, Ricker, would attend the sale and purchase it; that appellants were not notified of the sale; third, that Ricker purposely did not inform appellants of this conversation with an officer of the respondent, neither did

Ricker notify appellants of the sale, but went to Chicago and purchased the collateral for one thousand dollars ($1,000); that the reasonable market value of this collateral was sixty-three thousand dollars ($63,000); fourth, that Ricker and Smith had in the first instance undertaken to finance the National Farms Estate, and that it was in furtherance of Ricker's efforts to so finance the trust that the note sued on was given; that respondent knew of the relationship, which existed between appellants and R'cker.

When Ricker purchased, at the sale, the collateral, pledged as security for the note, he became a trustee of this property and held it for the benefit of all the guarantors. [28 C. J. 1039, sec. 217; In re Koch's Estate, 134 N. W. 1. c. 668 (10, 11); 148 Wis. 548; Sanders v. Weelburg, 107 Ind. 266, 7 N. E. 573.] Appellants, who constituted the trustees of the National Farms Estate, complain because respondent did not notify them of the time and place of sale. They also complain of the inadequacy of the sale price. Appellants plead in their answer that Ricker in the first instance acted for them in financing the trust in the Florida land operations. In this capacity Ricker not only obtained the note sued on by respondent, but appellants intrusted him with the notes, belonging to the common-law trust, to be pledged as collateral security for the payment of the note made payable to respondent. Ricker acted as agent for appellants and negotiated this deal with respondent. At the sale, the very agent, who acted for appellants, purchased this collateral. ■ The status of the parties, in so far as the collateral sold is concerned, was then, just as it had been prior to the making of the note. Ricker had possession of the collateral and in law held it in trust for appellants. Appellants' contract of guaranty is an absolute promise to pay the note when due. In this contract the guarantors waived any and all demands, notice, protest and notice of protest. At the time of the sale, the note was more than two years past due. The collateral was sold at a public sale, as was provided for in the collateral pledge agreement. ■ In order to avoid liability a guarantor must prove facts that tend to convict the pledgee of bad faith in disposing of the collateral pledged with the note. [Baskin v. Crews, 66 Mo. App. 22; Warder, Bushnell & Glessner Co. v. Johnson, 114 Mo. App. 571; Wright v. Dyer, 48 Mo. 525; 28 C. J. 895.] Inadequate price alone is not sufficient, if the sale is fairly conducted. [Carson v. Iowa City Gas-Light Co., 80 Iowa, 638, 45 N. W. 1068.] There is not a word of testimony in the offer of proof that even suggests that respondent knew of any ulterior motive on the part of Ricker. Neither is there any claim that respondent knew of any fact, if any existed, that would lead it to suspicion or know that Ricker was not buying the collateral for the common benefit of all the guarantors. Absent such proof, respondent cannot be charged with the malfeasance of Ricker, who secretly, as appellants charge, intended to gain an ad-

vantage over his coguarantors. Taking the offer of proof, and drawing therefrom every reasonable inference in favor of appellants, it does not constitute a defense to the note sued on. Neither is it sufficient as a basis for a counterclaim. [California Bank v. Daniel, supra, 288 Pac. l. c. 11, 12 (18-21).] So far as the evidence, contained in the offer, discloses, respondent sold the collateral at a public sale as provided for in the collateral pledge agreement. The guarantor, with whom respondent had been dealing in this matter and who had been intrusted, by appellants, with the collateral in question, purchased it at the sale. This is a natural and very usual happening, under such circumstances. Respondent had the right to presume that Ricker was still acting for and on behalf of appellants, as he had done when he delivered the collateral to respondent and pledged it to secure the payment of the note.

The trial court was correct in its ruling in sustaining the objection to the evidence offered by appellants. The judgment of the circuit court is affirmed. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM :—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.