Adelaide V. Duncan, v. National Tea Company, et al., Appellees.
Kenmore Company, and Barbara A. Novak, Petitioners-Appellants, v. National Tea Company, John F. Cuneo et al., American Processing and Sales Company, Inc., Cuneo Press, Inc., Book Production Industries, Inc., and Garibaldi & Cuneo, Appellees.

Gen. No. 47,025.

First District, First Division.

June 19, 1957.

Rehearing denied October 4, 1957.

Released for publication October 4, 1957.

McConnell, Van Hook & Paschen, of Chicago (Thomas C. McConnell, W. Donald McSweeney, Francis J. McConnell, Edward B. Wagner, of Chicago, of counsel) for petitioners-appellants.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago (Weymouth Kirkland, J. B. Cleaver, Thomas B. Martineau, Robert H. Klugman, of Chicago, of counsel) for Harley V. McNamara and William E. Russell, defendants-appellees; Campbell, Clithero & Fischer, for John F. Cuneo and Raymond P. Fischer; Rothschild, Hart, Stevens & Barry, of Chicago, for American Processing and Sales Company, Cuneo Press, Inc., and Garibaldi & Cuneo (Herman A. Fischer, and John Paul Stevens, of counsel).

PRESIDING JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from an order denying a petition to intervene in a stockholder's derivative suit. The question presented is whether or not the petitioners are entitled to intervene as a matter of right under Section 26.1 of the Civil Practice Act. (Ill. Rev. Stat., 1955, chap. 110.)

The record reveals that on February 18, 1952, Adelaide V. Duncan, a stockholder in the National Tea Company, as trustee of the testamentary trust of her late husband, filed a complaint on behalf of herself and all others similarly situated, asserting the rights of National Tea Company, a corporation, in a derivative action seeking relief for the alleged misconduct of certain directors of that corporation. The various defendants all filed motions to strike the complaint and dismiss the action. Leave was granted plaintiff to file an amended complaint. By her amended complaint of December 19, 1952, plaintiff did not purport to represent others "similarly situated" but continued to assert rights derived from the corporation in her capacity as trustee and stockholder.

The complaint sets forth the manner in which the plaintiff acquired stock in National Tea Co. under her husband's trust and in substance alleges a continuing conspiracy on the part of certain directors, since 1944,

to cheat and defraud National for personal gain. The injuries alleged include an arrangement to make secret profits, illegal loans to the officers and directors, illegal stock transactions, excessive salaries, and the unjust enrichment of certain defendant corporations through so-called exclusive purchase agreements with National. The complaint alleges specifically the entry into certain transactions in the years 1945, 1947, and 1948, with the further allegation that the acts and doings of the individual defendants constitute continuing violations of the fiduciary duties and obligations of each of them to National and its stockholders.

The defendants filed motions to strike the amended complaint and dismiss the action on grounds that the plaintiff did not have the legal capacity to sue, and that the complaint was substantially insufficient at law and failed to allege a cause of action. The court considered these motions and entered an order denying them. The defendants then filed their answers and the cause was referred to a master in chancery.

The petitioners, the Kenmore Company, a corporation, and Barbara A. Novak became holders of record of common stock in National Tea Co. in February, 1955. On January 4, 1956, the petitioners filed a petition for leave to intervene as a matter of right under Section 26.1 (1) (b) of the Civil Practice Act, alleging that the representation of the petitioners' rights by the plaintiff was or might be inadequate because of plaintiff's advanced age and inability to prosecute the cause to a decree. The petitioners adopted in full the plaintiff's amended complaint, alleging no new matter or wrongdoing. The defendant, National Tea Co., did not resist the petition, but the other defendants raised numerous objections denying in substance that petitioners had any interest in the subject matter of the suit or that a decree therein could affect the petitioners. Prior to a hearing on this petition the plaintiff moved to join petitioners as coplaintiffs and re-

284

lieve herself from the responsibility of prosecuting the suit. By order of court on March 19, 1956, both the petition to intervene and plaintiff's motion to join petitioners as coplaintiffs were denied.

On April 11, 1956, defendants McNamara and Russell filed a petition for an order directing plaintiff to appear and give her deposition. Plaintiff answered on April 19 requesting that she be excused from giving testimony because of her advanced age, and because she had sold all her stock in National Tea Co. At the same time petitioners filed a second petition for leave to intervene, or in the alternative, a motion to vacate the order of March 19. The grounds for intervention alleged in the second petition were inadequate representation of petitioners' rights because the plaintiff was no longer a stockholder in National Tea Co., and that there existed a possibility of a decree in the action that would be binding against the petitioners. All defendants except National Tea Co. opposed this second petition for a variety of reasons not essentially different from their objections to the first petition, all of these reasons being again set forth on appeal. On May 3, 1956, the court entered an order denying both the second petition for leave to intervene and the alternative motion to vacate the order of March 19, 1956. A further order of the same date directed plaintiff to appear for the purpose of taking a discovery deposition, and in the event of plaintiff's failure to comply, directed that the suit be dismissed. This order also contained a provision striking and denying the second petition to intervene.

This appeal is taken from the order of May 3, 1956, denying the second petition to intervene and the alternative motion to vacate the order of March 19, 1956. Defendants argue that a final order denying an application for leave to intervene as a matter of right cannot be reviewed on an appeal from a subsequent order denying a second petition for leave to inter-

285

vene. Notice of appeal was filed on May 17, 1956, within the sixty-day period required for an appeal from a final order. Inasmuch as the order of May 3 not only denied the second petition but also denied a motion to vacate the order denying the first, this is an appeal properly taken from either or both orders denying petitioners the right to intervene. Classen v. Ripley, 407 Ill. 350, 352; id. 343 Ill. App. 298, 303.

This appeal presents only the question of the right of the petitioners to intervene in a stockholder's derivative suit on the ground of inadequate representation of petitioners' interest by the plaintiff. Defendants have attempted to interject matters pertaining to the merits of the complaint on this appeal. The trial court denied defendants' motion to strike the complaint. These matters are therefore irrelevant to the single issue that we must decide.

Section 26.1(1) (b) of the Civil Practice Act provides that upon timely application anyone shall be permitted as of right to intervene in an action when the representation of the applicant's interest is or may be inadequate and the applicant will or may be bound by a judgment, decree, or order in the action. In Dowsett v. City of East Moline, 8 Ill.2d 560 (1956), the Supreme Court of this State upheld a grant of intervention as a matter of right for inadequate representation. The facts of that case were not similar to those in the case at bar, but we believe the language of the court favors a liberal interpretation and application of the statute, and is, in that sense, binding upon this court (p. 567):

"Section 26.1 of the Civil Practice Act above referred to is new and was effective as of the 1st day of January, 1956, and provides a modern intervention practice for Illinois analogous to that prevailing in other States and Federal rules of civil practice. Under prior law the right to intervene was severely limited by the decisions of this court in Bernero v. Bernero, 363 Ill. 328, and Hairgrove v. City of Jacksonville, 366 Ill. 163.

286

This section now provides an intervention remedy of liberalized scope but grants the trial court the power to prevent intervention from unduly hampering or delaying the original plaintiffs in their conduct of the litigation. However, in interpreting and applying said section in a particular case the entire Civil Practice Act and its provisions must be considered."

To decide whether or not the present petitioners have a right to intervene, we must first determine what interest they have in the action. Counsel contend that because petitioners were not stockholders at the time of the transactions set forth in the complaint, they have no right to intervene in this action. As authority for this contention they have cited the following cases: Kaufman v. Wolfson, 136 F. Supp. 939 (S.D. N.Y. 1955); Hirshhorn v. Mine Safety Appliances Co., 101 F. Supp. 549 (W.D. Pa. 1951); Winkelman v. General Motors Corp., 44 F. Supp. 960 (S.D. N.Y. 1942); Piccard v. Sperry Corporation, 36 F. Supp. 1006 (S.D. N.Y. 1941); Breswick & Co. v. Harrison-Rye Realty Corp., 114 N.Y.S.2d 25 (1952). These cases all hold that one seeking to intervene in a derivative action must come within a statutory provision requiring the plaintiff in such an action to aver that he was a stockholder at the time of the transaction of which he complains. In the Federal courts, the plaintiff, or one seeking to intervene in a derivative action, must qualify under Rule 23(b) of the Federal Rules of Civil Procedure, which requires that plaintiff be a shareholder at the time the transaction of which he complains took place. In New York the plaintiff or intervenor must meet the requirements of section 61 of the New York General Corporation Law. The statutes of California, Delaware, Nevada, New Jersey, Pennsylvania, and Wisconsin also require the plaintiff in a derivative suit to aver that he was a stockholder at the time of the wrongdoing alleged in the complaint. There is no comparable rule or statute in Illinois.

287

Our Supreme Court has recognized a qualified right on the part of certain stockholders to maintain a derivative action for acts of mismanagement which occurred prior to their acquisition of stock. In Lampropulos v. Kedzie Ogden Bldg. Corp., 4 Ill.2d 32 (1954) the court said (at p. 37):

"While it was held in City of Chicago v. Cameron, 22 Ill. App. 91, upon which appellant relies, that the time and manner of the plaintiff's acquisition of stock, and the intent with which he acquired it, did not affect his right to bring suit against allegedly wrong-doing directors, more recent authorities establish that the right of a stockholder to maintain a derivative action based upon mismanagement or misfeasance by officers or directors, occurring prior to his acquisition of stock, is not an unqualified one. (See 148 A.L.R. 1090; . . . Goldberg v. Ball, 305 Ill. App. 273, 27 N.E.2d 575.)."

An analysis of the Illinois decisions indicates that where a stockholder has acquired his stock after the occurrence of alleged acts of mismanagement, he may maintain a derivative suit *only if* the mismanagement and its effects continue and are injurious to him *or* the alleged mismanagement affects him specially and peculiarly in some other manner. The rule was adopted by this court in Goldberg v. Ball, 305 Ill. App. 273 (1940). (Petition for leave to appeal denied.) That case involved a derivative action brought by the holder of one hundred shares of stock in the Standard Oil Company of Indiana. The plaintiff had acquired her stock in 1936. In 1937 she instituted suit alleging in her complaint certain acts of mismanagement by the directors during the years 1925 to 1927. The motion of the defendants to dismiss the action raised the question of the plaintiff's capacity to bring a suit attacking transactions which had occurred prior to her acquisition. of stock. The court pointed out that the plaintiff had failed to allege a continuing wrong or any

288

special effects arising from the alleged mismanagement. It concluded that the failure to make a demand on the board of directors prior to instituting suit, as well as failure to allege a continuing wrong, constituted sufficient reason for dismissing the complaint.

In reaching its decision the court relied almost exclusively on the reasoning and conclusions set forth in Home Fire Ins. Co. of Omaha v. Barber, 67 Neb. 644, 93 N. W. 1024 (1903), a well-known opinion by Roscoe Pound when he was sitting as a commissioner with the Supreme Court of Nebraska.

That case involved a suit by a corporation against one of its former officers and directors to recover money taken by him as back salary and other money he was alleged to have appropriated to his own use, and to recover for his alleged mismanagement and for profits made by him through the use of the company's money when he occupied a fiduciary capacity. On the question of mismanagement the court noted that a recovery on behalf of the corporation would inure entirely to the benefit of new stockholders and would amount, in substance, to a recovery back by them of the purchase money they had paid the defendant for his stock. For that reason the court then devoted attention to the question of how far, if at all, subsequent shareholders might complain of prior mismanagement of the corporation. After an exhaustive analysis of the existing authorities, the court drew the following pertinent conclusions (93 N. W. 1028, 1029):

"Sound reason and good authority sustain the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation. (Citing a number of cases including Hawes v. Oakland, 104 U.S. 450; Dimpfel v. Ohio & Mississippi R. Co., 110 U.S. 209; Taylor v. Holmes, 127 U.S. 489.) . . . In other words, the present stockholders are contesting acts through which they get title to a large portion of their stock, and acts which those through whom they de-

rived the greater part of the remainder could not have challenged because they participated therein, and, by contesting these acts, *which did not injure any of the present stockholders in the least,* are recovering back a large part of the purchase price of stock which was admittedly worth all that they paid for it. *Such cases illustrate forcibly the wisdom of confining complaints of this kind* to those who were stockholders at the time or their successors by operation of law.

"The rule that a suit for mismanagement cannot be maintained by one who was not a stockholder at the time . . . has its foundation in a sound and wholesome principle of equity. . . . The right of the stockholder to sue exists because of special injury to him for which otherwise he is without redress. If his interest is trifling and the injury thereto of no consequence, he cannot sue to compel righting of wrongs to the corporation. . . . Hence, there is obvious *reason for holding that one who held no stock at the time of the mismanagement ought not to be allowed to sue, unless the mismanagement or its effects continue and are injurious to him, or it affects him specially and peculiarly in some other manner.* City of Chicago v. Cameron, 22 Ill. App. 91, aff'd 120 Ill. 447, is a case of the first type. Carson v. Iowa City Gaslight Co., 80 Iowa 638, 45 N.W. 1068, is of the second type. *Except in such cases,* the purchaser ought to take things as he found them when he voluntarily acquired an interest." (Emphasis added.)

We are of the opinion that the language making an exception for the situation in which the mismanagement or the results thereof continue and adversely affect a subsequent stockholder is pertinent to the facts of the instant case as alleged in the complaint. The theory of a continuing injury is based on the interpretation of City of Chicago v. Cameron, 22 Ill. App. 91, aff'd 120 Ill. 447 (1887). In that case the injury was the fraudulent misappropriation by the president of a

railroad of certain bonds belonging to the railroad. The misappropriation had occurred in 1873 and the plaintiffs had become stockholders of the railroad in 1884 with the intention of carrying out the construction for which the bonds had originally been issued. The plaintiffs brought an action on behalf of the railroad to have the bonds declared *ultra vires* and void. The trial court granted the relief requested and the City of Chicago, as a holder of the bonds, raised on appeal the capacity of the plaintiffs to maintain a derivative action for an injury which had commmenced eleven years prior to their acquisition of stock. The court ruled that this objection was not well taken, giving as its reason the rule that the plaintiff in a derivative action does not seek relief in its own right, but on behalf of the corporation. The implication is clear that the court thought the injury to the corporation was as great in 1884 as it had been in 1873. The effect of the injury was felt by the subsequent stockholders as well as those who were stockholders at the time of the misappropriation.

We have noted heretofore that our Supreme Court in Lampropulos v. Kedzie Ogden Bldg. Corp., supra, recognizes the current validity of the Cameron case subject to the qualifications adopted by this court in Goldberg v. Ball, supra. This qualification requires either an injury of enduring effect or one peculiarly affecting a given stockholder or group of stockholders. The defendants have cited three decisions by the court in support of the contention that a stockholder may not institute suit for any act of mismanagement occurring prior to his acquisition of stock. These are: Babcock v. Farwell, 146 Ill. App. 307, aff'd 245 Ill. 14 (1910); Bilhuber v. Bilhuber-Wawak Co., 245 Ill. App. 552 (1927); and Prince v. Cornell Bldg. Co., 3 Ill.App.2d 478 (1954). We have examined these decisions, and in view of the foregoing discussion, find them not persuasive.

Babcock v. Farwell, supra, arose from a complicated transaction involving a contract with the State of Texas for the erection of a state capitol building at Austin in return for a land grant of three million acres in that state. One Babcock, a man named Taylor, John V. and Charles B. Farwell were assignees of the contract. Babcock transferred one half of his interest in the contract to one of the Farwells to whom he had been previously indebted and received an acknowledgment from the Farwells that they held the remainder of his interest in trust. A series of complex transactions followed including the incorporation of the Capitol Freehold Land and Investment Company to which the three million acres of Texas land was sold for shares of stock in the corporation. During these transactions Babcock's interest in the original contract was apparently overlooked although it appreciated materially as a result of the transactions. Through further negotiation with the Farwells *Babcock released his claims in return for 20,000 shares of stock in the corporation,* half of which were delivered to a trustee at his request and, in accordance with his will, were transferred by the trustee to his wife at his death.

Babcock's wife then brought suit on behalf of all stockholders, seeking to have a number of contracts between the corporation and the Farwells declared void. A demurrer to the bill was sustained and the cause was dismissed for want of equity. The Appellate Court for this district affirmed the ruling on three grounds: (1) any contract rights in Babcock were personal and not assignable; (2) as a stockholder Babcock ratified the transactions under attack; (3) plaintiff had no standing as a stockholder to complain of transactions which occurred prior to her acquisition of stock. The opinion draws no clear distinction between the second and third grounds. Laches, the statute of limitations, waiver, ratification, and satisfaction are discussed at length. While asserting that the plaintiff

292

was barred from suing in a representative capacity because she had acquired her stock after the alleged fraudulent transactions occurred, the court seems to rest its conclusion on the failure of Babcock to assert his rights with greater vigor during his lifetime.

The Appellate Court decision was affirmed by our Supreme Court in Babcock v. Farwell, 245 Ill. 14 (1910). The opinion by Mr. Justice Dunn does not touch on the rights of an after-acquired stockholder as such, but is confined to the doctrine that where the assignor or vendor of stock waives the right to sue in his own behalf or on behalf of the corporation, his vendee or assignee is restricted by the same disability. As authority the court cites Home Fire Ins. Co. v. Barber, supra.

Bilhuber v. Bilhuber-Wawak Co., supra, involved four alleged instances of wrongdoing, including the purchase out of corporate funds of an automobile for the private use of one of the officers and directors. The purchase was made in 1918 and one of the plaintiffs acquired her stock in 1920 out of an allotment of stock to her husband, made possible by an increase in the capital stock of the corporation, also alleged in the complaint as a wrongful undertaking. The case is similar to Babcock v. Farwell, supra, and turns on the assent of the husband to the alleged acts of wrongdoing, but contains language stating that the time at which Mrs. Bilhuber acquired her stock precluded her from asserting any rights in regard to the transaction involving the automobile. We do not believe the case is good authority on this point. In Prince v. Cornell Bldg. Co., supra, the Third Division of this court misconstrued the extent of the holding in Goldberg v. Ball, supra.

■ The amended complaint in the instant case was adopted in full by the petitioners. The tenor of the complaint is a continuing conspiracy on the part of certain directors to defraud the corporation. It is con-

293

ceivable that one or more of the transactions comprising the alleged conspiracy, if injurious at all, has had an adverse effect upon the interests of the petitioners. For this reason we hold that the present petitioners are not precluded from intervening in this action merely because they acquired their stock after the incidence of the alleged acts of wrongdoing.

The assumption inherent in an assertion of the statutory right to intervene is the representation of the applicant's interest by one of the existing parties to the action. Defendants have contended that no relief has been sought for stockholders of National Tea Co. as a class and submit for that reason that there could not be a decree in this action which would bind the petitioners. The petitioners argue that a decree in the instant action would bind the corporation and therefore all stockholders who in the future might wish to assert the same cause of action in its behalf.

■■ The courts of this State have frequently emphasized the concept that the plaintiff in a stockholder's derivative suit does not sue in an individual capacity, but as the representative of the corporation. See City of Chicago v. Cameron, 120 Ill. 447 (1887); Bruschke v. Der Nord Chicago Schuetzen Verein, 145 Ill. 433 (1893); Farwell v. Great Western Telegraph Co., 161 Ill. 522, 604 (1896); McIlvaine v. City Nat. Bank and Trust Co., 314 Ill. App 496, 512 (1942); Bingham v. Ditzler, 309 Ill. App. 581 (1941). Such a suit is distinguishable from one in which the plaintiff has a personal claim at issue and brings an action either individually or as the representative of other stockholders who have been similarly injured. See 13 Fletcher Cyclopedia Corporations, sec. 5908 (1943 Ed.); McLaughlin, The Capacity of the Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L. J. 421, 423–5 (1936). In a derivative action those "similarly situated," in whose behalf the action is often brought, are merely all other stockholders

qualified to maintain the action. Because, in such an action, the stockholder-plaintiff is enforcing a right belonging to the corporation, and a recovery on its behalf would benefit all stockholders, except those who had actively participated in the wrong, an allegation that the suit is brought on behalf of those "similarly situated" is not material to the representative capacity of the plaintiff. See Glenn, The Stockholder's Suit—Corporate and Individual Grievances, 33 Yale L. J. 580, 583 (1924).

 The Illinois decisions already cited have incorporated language from Pomeroy's work on equity which states that a stockholder or stockholders may assert the rights of the corporation "either individually or as the representative of the class," but we do not construe this language as a license to stockholders to burden the courts of this State with separate, simultaneous derivative suits for the same cause of action. See 4 Pomeroy's Equity Jurisprudence, sec. 1095 (5th Ed. 1941).

Closely related to the question of representation is the possibility that a decree in the present action would bind the petitioners. Although there is no Illinois decision in point, a leading case on the binding effect of a decree in a stockholder's derivative suit is Dana v. Morgan, 232 F. 85 (CA 2 1916). The case involved a suit to recover for the corporation alleged excessive compensation paid an officer under a contract which had been ratified by a majority of the stockholders. The plaintiff brought an action on behalf of himself and those stockholders who had not ratified the contract and were willing to contribute to the expense of the litigation. A year earlier another stockholder had commenced a similar suit in a New York court. Judgment was had for the defendant in the New York action and that bill was dismissed. The question before the Second Circuit was whether or not the judgment in the New York court precluded a subsequent action

by another stockholder for the same cause of action. The Circuit Court of Appeals for the Second Circuit ruled that it did in the following language (pp. 89, 91):

"It makes no difference, in the absence of fraud or collusion, that a stockholder's suit is prosecuted by one or more, or by all the stockholders; the suit being brought on behalf of all others of like interest joining therein. As was said in Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663, the action is really the action of all the stockholders, as it is necessarily commenced in their behalf and for their benefit. And as in such suits the wrong to be redressed is the wrong done to the corporation and as the corporation is a necessary part to the suit, it inevitably follows that there can be but one adjudication on the rights of the corporation. And it is undoubted law that the judgment in the state court is an estoppel and a finality not only as to all matters actually litigated in the suit but also as to all matters which were not but might have been presented to the court and passed upon therein. See Landon v. Bulkley, 95 Fed. 344, 37 C. C. A. 96. . . .

"The plaintiff's difficulty is that he apparently overlooks the real nature of a stockholder's suit. The true theory of such a suit is well stated by Pomeroy in his work on Equity Jurisprudence (volume 3, sec. 1095). . . .

"The plaintiff insists that the judgment of the New York court does not affect him, as he was not a party to it, a privy to it, or represented in it. The answer is that the corporation whose interest he seeks to represent in this suit was a party to that action and is concluded by it and that that concludes him."

The rationale of Dana v. Morgan, supra, coincides with the theory expressed in the Illinois decisions to which we have already referred. (City of Chicago v. Cameron, supra; Bruschke v. Der Nord Chicago Schuetzen Verein, supra; Farwell v. Great Western Telegraph Co., supra; McIlvaine v. City National

296

Bank and Trust Co., supra; Bingham v. Ditzler, supra.) A summary of other cases on this point may be found in Fletcher's treatise, 13 Fletcher Cyclopedia Corporations, sec. 6043, which reads as follows:

"Generally stockholders similarly situated and for whose benefit the stockholders' suit is brought, are bound by the decree. The decree in one stockholders' suit is a bar to other such suits on the same cause of action. But there are decisions holding that a decree in a stockholders' suit brought by named stockholders, but not on behalf of other stockholders who might join, is not res judicata as to such other stockholders, and that the decree does not bind other stockholders on whose behalf it is brought but who do not join as plaintiffs."

Any implication that the conclusiveness of the decree in a derivative action depends upon whether or not the action was brought on behalf of other stockholders is not supported by the decisions holding a decree not binding to which the author refers. These decisions involve decrees in actions not derived from the corporation, a decree in a derivative action which might have been collusive, and an action involving an unincorporated association from which no right could be derived. (See cases cited 13 Fletcher, sec. 6043, notes 88 and 89.) We conclude that a final decree in the instant action would bind the petitioners.

The final question to be considered is the possible inadequacy of the representation of the interest of the petitioners by the plaintiff. Both the possibility of her failure to prosecute the action and the sale of her stock have been advanced as reasons to support the allegation that her representation may be inadequate. The adequacy of the plaintiff's representation in stockholder's suits has been considered by several Federal District Courts where other stockholders have attempted to invoke the intervention privileges of Rule 24 (a) (1) of the Federal Rules of Civil Procedure,

which is identical to the statute now under consideration.

In Malcolm v. Cities Service Co., 2 F.R.D. 405 (Del. 1942), the plaintiff stockholder brought a class action against three corporations for the alleged diversion of the assets of one of them. The plaintiff then sold her stock to one of the defendants and abandoned the suit. Plaintiff's attorneys requested the court to fix an attorney's lien on the theory that the plaintiff's transaction constituted a compromise of a class action which under Rule 23(c) could not become effective without notice to the other stockholders and the approval of the court. The court denied the relief requested on the ground that the transaction was not a compromise, *but stated further* that although the plaintiff could not proceed with the action because she was no longer a stockholder, the other members of the class were protected under Rule 24(a). The court said (at p. 407):

"Any member of the class otherwise qualified, may intervene in this suit on the ground that their rights are no longer adequately protected or even represented. The cause of action, if there be one, remains unaffected by the sale of plaintiff's stock."

An application for leave to intervene in a derivative suit was allowed a qualified stockholder where defendant's motions for summary judgment dismissing both of the plaintiff's causes of action were granted with leave to amend the second cause of action. Truncale v. Universal Pictures Co., 76 F. Supp. 465 (S.D. N.Y. 1948). The plaintiff was disqualified on his first cause of action under Rule 23(b); in the absence of an allegation of fraud the second count was deemed not to be actionable. On the point of intervention the court failed to state whether the application was brought under subsection (a) or (b) of Rule 24, but made a sweeping statement dismissing the "technical objec-

298

tion" that there was no longer any action in which to intervene (p. 471):

"An application has been made by one Freiday for leave to intervene. Defendants oppose the application. They assert that since plaintiff Truncale is not entitled to institute this action, there is in fact no action pending in which intervention may be granted.

"The history and purpose of the Federal Rules are antagonistic to any such technical limitations upon a course of action obviously designed to save time and money. A denial of Freiday's application and a dismissal of Truncale's complaint would not prejudice the institution of a new suit by Freiday. I see no reason for encouraging the delay and duplication a denial of the application would entail. Mullins v. DeSoto Securities Co., W.D. La., 1944, 3 F.R.D. 432; Malcolm v. Cities Service Co., D.Del., 1942, 2 F.R.D. 405. See Kapp v. Frank W. Kerr Co., E.D. Mich., 1942, 2 F.R.D. 509; Hastings v. Chrysler Corporation, E.D. N.Y. 1943, 3 F.R.D. 274."

Where the corporation sued in its own behalf at the instigation of the owner of a very small percentage of its outstanding stock, that stockholder was granted leave to intervene as a matter of right in order to assure proper prosecution of the cause, although there was no definite indication that the corporation had been or would be lax in its pursuit of justice. Twentieth Century Fox Film Corp. v. Jenkins, 7 F.R.D. 197 (S.D. N.Y., 1947).

Applications for leave to intervene as a matter of right on the ground of inadequate representation were denied in Fielding v. Allen, 9 F.R.D. 107 (S.D. N.Y. 1949) and in Mullins v. DeSoto Securities, Inc., 2 F.R.D. 502 (W.D. La. 1942). In the Fielding case the plaintiff had brought the action in behalf of all stockholders "who may join in and contribute to the expenses of the action." After finding the representation by the plaintiff adequate the court stated that

those applicants who agreed to bear their ratable proportion of the expense could be made co-complainants appearing by plaintiff's counsel. In the Mullins case the application two and one-half years after the dismissal of the complaint was not timely and the dissimilarity of certain issues precluded the possibility of a judgment binding against the petitioners.

 We are of the opinion that the petitioners in the instant action have alleged a sufficient possibility that the representation of their interests by the plaintiff may be inadequate. Application for leave to intervene was made in January, 1956, a few days after the effective date of Section 26.1. The timeliness of the application has been considered a matter for the discretion of the court even where intervention of right is sought. Mullins v. DeSoto Securities Corp., supra; Simms v. Andrews, 118 F.2d 803 (C.A. 10 1941). The application in the instant case, was, in our opinion, timely.

On the basis of our analyses of the statutory provision on intervention and the case law pertaining to the various contentions, we are of the opinion that the trial court erred in denying the petition for leave to intervene. The order of the trial court is reversed with directions to allow the petition for leave to intervene and for such further action in the cause as is not inconsistent with this opinion.

Order reversed with directions.

SCHWARTZ and McCORMICK; JJ., concur.