ROCK RIVER SAVINGS AND LOAN
ASSOCIATION, an Illinois
Corporation, Plaintiff,

v.

AMERICAN STATES INSURANCE COM-
PANY, an Indiana Corporation, Defend-
ant and Third Party Plaintiff-Appellant,

v.

PEAT, MARWICK, MITCHELL & COM-
PANY, Donald E. Levinson, Dale L. Le-
vinson, Kenneth Clausen, Floyd Palm-
quist and Richard Runstrom, Third Par-
ty Defendants-Appellees.

No. 78–1457.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1978.

Decided March 22, 1979.

Gilbert J. Schroeder, Chicago, Ill., for appellant.

Robert D. McLean, Champ W. Davis, Jr., Chicago, Ill., for appellees.

Before TONE and BAUER, Circuit Judges, and WHELAN, Senior District Judge.*

BAUER, Circuit Judge.

This appeal arises from a diversity action brought by the Rock River Savings and Loan Association against American States Insurance Company. The Association alleged that it had suffered a loss due to the fraudulent conduct of five of its former officers, and that this loss was compensable under a surety bond issued by American States. The insurance company subsequently joined as third party defendants the five former officers and the Association's accountants, Peat, Marwick, Mitchell and Company. When the primary action between American states and the Association was settled, the third party action alone remained in the case.

As a subrogee of the Association, the insurance company alleged that the accountants had breached a duty of care to the Association by failing to discover and report the fraudulent transactions of the five officers. However, the district court did not reach the merits of the claim, for it held that, under equitable principles announced by the Supreme Court in *Bangor Punta Operations v. Bangor & A. R. Co.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), American States did not have standing in equity to maintain the action. Not-ing that the entire stock of the Association was sold at a discount after the alleged fraud was made public, the court found that the new ownership would reap a profit from wrongs done to others if it were permitted to recover damages from either Peat, Marwick or the five former officers. It therefore concluded that under *Bangor Punta* neither the Association nor its subrogee, American States, could maintain the action. We affirm.

In *Bangor Punta* the Supreme Court held that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares at a fair price from those who participated or acquiesced in the allegedly wrongful transactions:

"The equitable considerations precluding recovery in such cases were explicated long ago by Dean (then Commissioner) Roscoe Pound in *Home Fire Insurance Co. v. Barber, supra* [67 Neb. 644, 93 N.W. 1024 (1903)]. Dean Pound, writing for the Supreme Court of Nebraska, observed that the shareholders of the plaintiff corporation in that case had sustained no injury since they had acquired their shares from the alleged wrongdoers after the disputed transactions occurred and had received full value for their purchase price. Thus, any recovery on their part would constitute a windfall, for it would enable them to obtain funds to which they had no just title or claim. Moreover, it would in effect allow the shareholders to recoup a large part of the price they agreed to pay for their shares, notwithstanding the fact that they received all they had bargained for. Finally, it would permit the shareholders to reap a profit from wrongs done to others, thus encouraging further such speculation. Dean Pound stated that these consequences rendered any recovery highly inequitable and mandated dismissal of the suit."

417 U.S. at 710–711, 94 S.Ct. at 2583. Furthermore, the Court found that if equity

* The Hon. Francis C. Whelan, Senior Judge of the United States District Court for the Central District of California, is sitting by designation.

would preclude the shareholders from maintaining an action in their own right, it would also preclude a suit by the corporation which they controlled. *Id.* at 713, 94 S.Ct. 2578.

■ These general principles are applicable to the facts of this case. The new ownership of the Association acquired its shares at a discount from the five officers who had participated in the allegedly fraudulent transactions after the transactions had been made public. Therefore, under *Bangor Punta*, neither the new ownership nor the Association that it now controls has standing in equity to complain of the alleged fraud. And, since a subrogee has no greater rights than its subrogor, *Seeder v. Zoros*, 315 Ill.App. 60, 42 N.E.2d 134 (1942); *Insurance Company of North America v. Morgan Dyeing and Bleaching Co.*, 262 F.2d 916 (7th Cir. 1959), it follows that American States also cannot maintain the action.

■ In this connection, the appellant claims that *Bangor Punta* can be distinguished from this case since recovery is sought from the accounting firm (which did not "participate or acquiesce" in the alleged fraud) rather than prior management. However, this argument wholly misconceives the rationale for the *Bangor Punta* doctrine. The critical factor is not the nature of the defendant, but rather, the nature of the plaintiff and the asserted claim. That is, the equitable considerations of *Bangor Punta* come into play if (1) the plaintiff is a shareholder who has acquired his shares at a fair price from those who "participated or acquiesced" in earlier acts of alleged corporate mismanagement; and (2) the claim for relief seeks damages for those same acts of alleged corporate mismanagement. It is the combination of these two factors that "would permit the [new shareholder] to reap a profit for wrongs done to others." Viewed from this perspective, then, it is clearly a matter of no consequence that the appellant is seeking to recover such a "windfall" from the accountants on the theory that they somehow permitted the alleged fraud to go undetected. Accordingly, we find no basis for confining the *Bangor Punta* rule to actions against prior management.

■ The appellant cites two other grounds for distinguishing *Bangor Punta* from the case at hand. First, he points to the possibility that the *depositors* of a savings and loan association might be injured by corporate mismanagement and therefore entitled to recover from the former owners. However, as the district court noted, "the depositors in this case in fact suffered no loss, no impairment of their withdrawable capital accounts." Therefore, even if there is an exception to the *Bangor Punta* rule for cases in which a loss is suffered by individuals other than the selling shareholders, such an exception is not applicable here.

Second, the appellant suggests that the Illinois courts would not apply the *Bangor Punta* rule to the facts of this case. The claim is apparently based on the fact that the Illinois courts have recognized an exception to the general rule "for the situation in which the mismanagement or the results thereof *continue* and adversely affect a subsequent stockholder." *Duncan v. National Tea Co.*, 14 Ill.App.2d 280, 289–90, 144 N.E.2d 771, 776 (1957). In this case, however, there have been no allegations that the former owners' allegedly fraudulent transactions inflicted a "continuing injury." Accordingly, on these facts, we find no basis for holding that the Illinois courts would decline to apply the *Bangor Punta* rule.

We have examined the appellant's other arguments and find them to be without merit. The judgment of the district court is therefore

Affirmed.